Louis Otten, J.
Richard N., the child subject of this proceeding for review of foster care pursuant to section 392 of the Social Services Law, is a four-year-old boy (born Sept. 22, 1972) who has been in foster care since October 10, 1972 (when he was less than three weeks of age). On October 3, 1973 the child, then approximately one year old was transferred from his original foster home to the foster home in which he has resided ever since, a period of three years. The record indicates that the change of foster homes was necessitated by the illness of the first foster mother. The child is emotionally and psychologically a part of the family of his present foster parents and unquestionably relates to them as his parents.
The biological mother has been hospitalized several times for psychiatric reasons and was so hospitalized at the time of the child’s birth. She has two older sons by another father. The oldest son, Arthur N., is in placement with another agency. The mother has not seen him for the past year, allegedly because he has been allowed to maintain contact with his father. The second son, Nick N., formerly was in foster care with the same foster parents who now are caring for Richard. This child was discharged to the biological mother and has been living with her for approximately a year. The evidence leaves in doubt the success of Nick’s adjustment since his discharge from foster care.
The mother has maintained some contact with Richard through agency supervised visits, sometimes on a relatively regular basis. Since July, 1976, the visits have been more frequent and extensive as a result of a court directive based upon the recommendation of the court psychiatric clinic. *723 There is testimony that these visits may have been disturbing to the child.
A psychiatrist retained by the agency, Children’s Aid Society, has characterized the biological mother as "paranoid schizophrenic” and "very fragile”. The diagnosis by the court psychiatric clinic is "schizophrenia, residential type”.
The biological father, who has acknowledged paternity, has displayed interest, albeit largely of a proprietary nature, in the child; has visited the child infrequently from time to time, and has indicated a willingness to assume custody of the boy if not given to the mother. The relationship of the natural parents to each other has been inconsistent and at times explosive. At the hearing the father supported the mother’s claim for immediate custody.
Dr. Peter Bokat, a child psychiatrist, testified at the hearing that the child regards his foster parents as his psychological parents and is not now prepared for removal; that such removal now would upset the child and his emotional development and might cause extreme regression and permanent adverse effects.
At the hearing the agency, Children’s Aid Society, and the Commissioner of Social Services request that foster care be continued with a direction to initiate proceedings to terminate parental rights with a view to the child’s adoption by the foster parents. The Law Guardian recommends a similar disposition. The biological mother asks for prompt discharge of the child to her and the father joins in this request. The foster parents request that the child be freed for adoption by them and placed in their home as an adoptive home.
The attorney for the respondent mother, in a memorandum of law submitted after the hearing, questions the power of the court to order termination proceedings on the ground that such relief was not specifically requested in the petition.
The petition dated August 1, 1975 alleges in paragraph 6 that the best interest of the child lies in continued foster care and does indicate a plan for ultimate discharge of the child to the mother. However, in the ad damnum clause the "petitioner prays for a review of the foster care status of said child, pursuant to Section 392 of the Social Services Law, and that the Court enter an order of disposition continuing the foster care of the above-named child and granting such other and further relief as to the Court may seem just and proper.”
*724 Subdivision 7 of section 392 of the Social Services Law itself specifies the alternative dispositions, one of which the court shall make at the conclusion of the hearing "in accordance with the best interest of the child”. A direction to institute a proceeding to free the child for adoption is one of the dispositional orders specified in the statute. The specific reference to the statute prescribing the relief sought is sufficient compliance with the requirements of due process. Furthermore, a statement of the dispositional alternatives was contained in the notice served upon this respondent and her attorney.
The New York case cited by respondent’s counsel in his memorandum (Silbert v Silbert, 22 AD2d 893, affd 16 NY2d 564) applies to a complaint requesting a money judgment and holds that the recovery may not exceed the amount asked for in the complaint. (See, also, Michalowski v Ey, 7 NY2d 71, 75.) Such cases obviously have no pertinence to a proceeding under the Social Services Law in which the basic issue is the best interests of a child. The child is not the petitioner, and his interest required by law to be protected may not be subordinated to a hypertechnical construction of a pleading made by a public official or agency.
On the entire record in this proceeding the court finds reasonable cause to believe that grounds exist legally to free the above-named child, Richard N., for adoption and directs the agency, Children’s Aid Society, to institute a proceeding for that purpose.
Pursuant to subdivision 10 of section 392 of the Social Services Law, the agency is directed to submit a progress report on or before March 15, 1977. In the event of failure to submit such report or if such report fails to disclose the pendency or completion of the proceeding directed to be instituted, the clerk of court is ordered to reschedule this proceeding promptly for further review.